T.C. Summary Opinion 2003-91

UNITED STATES TAX COURT

MARY L. COLEMAN-STEPHENS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14797-02S.                    Filed July 16, 2003.

Mary L. Coleman-Stephens, pro se.

<u>J. Craig Young</u>, for respondent.

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue.

Respondent determined a deficiency in petitioner's Federal income tax of $510 for the taxable year 1999. The issue for decision is whether a qualified retirement plan distribution was attributable to petitioner's being "disabled" within the meaning of section 72(m)(7), thereby excepting petitioner from liability for the section 72(t) additional tax.

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioner resided in Fayetteville, North Carolina, on the date the petition was filed in this case.

Petitioner is employed by the U.S. Postal Service, but she generally has not been working there since becoming ill on February 19, 1997. Petitioner was hospitalized for depression in May 1997 and released in July of that year. Beginning in September 1997, petitioner began treatment with Dr. Seth Labovitz, a clinical psychologist with the Department of Veterans Affairs Medical Center in Salisbury, North Carolina. Dr. Labovitz determined that petitioner's condition was at least in part work-related. In January 1998, Dr. Labovitz recommended that petitioner return to work on a full-time basis, but in a position with little or no supervisory responsibility.

By letter dated May 15, 1998, petitioner was notified by the U.S. Department of Labor, Employment Standards Administration,

Office of Workers' Compensation Programs (OWCP), that her "occupational disease claim" had been accepted for the condition of "depression" with an injury date of February 19, 1997.

Petitioner was given a limited-duty position at the U.S. Postal Service in June 1998. However, petitioner was unable to continue in this position and ceased working again after approximately 2 to 3 weeks. At or around this time, petitioner requested through Dr. Labovitz that she be allowed to reduce her workday to 4 hours.

Petitioner temporarily stopped meeting with Dr. Labovitz after July 31, 1998. Petitioner then reentered the hospital in October 1998 and stayed there for approximately 2 weeks, after which time she began meeting with Dr. Labovitz again. By letter dated December 18, 1998, Dr. Labovitz stated in relevant part:

> At the present time, however, there remain significant depressive symptoms and behaviors and a return to work is not recommended.
>
> In summary, in my opinion, Ms. Coleman-Stephens' attempt to return to work in June of 1998 resulted in an exacerbation of her depressive illness to the point where she was unable to work. Further, in my opinion, she has been disabled since then and remains so at this time, though with progress noted and fair prospects for eventual return to work in some capacity.

In February 1999, Dr. Labovitz was informed by the OWCP that they required more information concerning why petitioner could not accept a 4-hour workday assignment which had been offered to her in October 1998. There is no response to this letter in the

record.  Petitioner has not worked at the U.S. Postal Service since her brief return in June 1998, but she continues to receive workers' compensation payments from the OWCP.  She has not seen a therapist since early 2000 or 2001.  She has been given various medications over the years and "still [takes] some every now and then."

At some point in time petitioner received a loan from the Federal Employees' Thrift Savings Plan (TSP).  This loan was not repaid or reamortized by the required deadline.  Consequently, the TSP National Finance Center declared that petitioner had a taxable distribution from the plan on July 12, 1999, of $5,181, the amount of unpaid principal and interest as of that date.

Petitioner filed a Federal income tax return for taxable year 1999, on which she included in her income the TSP distribution at issue.  She did not report liability for an additional tax under section 72(t).  In the statutory notice of deficiency, the sole adjustment was respondent's determination that petitioner was liable for such an additional tax in the amount of $510.[1]

Generally, section 72(t)(1) imposes a 10-percent additional tax on early distributions from qualified retirement plans, unless the distribution comes within one of several statutory

--------

[1]Although 10 percent of the distribution equals $518, respondent does not seek an increased deficiency.

exceptions. As is relevant to the present case, section 72(t)(2)(A)(iii) provides an exception for distributions "attributable to the employee's being disabled within the meaning of subsection (m)(7)". Section 72(m)(7) provides:

> (7) Meaning of disabled.--For purposes of this section, an individual shall be considered to be disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be disabled unless he furnishes proof of the existence thereof in such form and manner as the Secretary may require.

Respondent first argues that petitioner was not "so impaired by depression during 1999 as to be unable to engage in substantial gainful activity". The regulations provide:

> The substantial gainful activity to which section 72(m)(7) refers is the activity, or a comparable activity, in which the individual customarily engaged prior to the arising of the disability * * * .

Sec. 1.72-17A(f)(1), Income Tax Regs.

Respondent "acknowledges that petitioner began suffering from depression in 1997, and that due to her depressive illness, she was, at least for some period of time, unable to work." There is no evidence in the record indicating that petitioner's condition changed significantly from 1997 through the end of 1999. While the record lacks in details concerning petitioner's medical condition throughout this period of time, it is clear that petitioner was unable to continue in her employment, despite an attempt to return to a comparable position with the U.S.

Postal Service.  Consequently, we find that petitioner was "unable to engage in any substantial gainful activity" during the year in issue.[2]

Respondent next argues that petitioner's condition was not "indefinite" within the meaning of section 72(m)(7).  The regulations elaborate on this term as follows:

> The term "indefinite" is used in the sense that it cannot reasonably be anticipated that the impairment will, in the foreseeable future, be so diminished as no longer to prevent substantial gainful activity.  For example, an individual who suffers a bone fracture which prevents him from working for an extended period of time will not be considered disabled, if his recovery can be expected in the foreseeable future; if the fracture persistently fails to knit, the individual would ordinarily be considered disabled.

Sec. 1.72-17A(f)(3), Income Tax Regs.

We find that petitioner's disability was indefinite at the time of the TSP distribution.  At that time, petitioner had attempted to return to work, which only caused her condition to worsen.  She was unable to work due to her disability, and there was no reasonably certain indication of when she would be able to return to work.  Indeed, as of the time of trial petitioner had been unable to do so.  The inability to predict when, if ever, petitioner would be able to return to work caused the disability

---

[2]Respondent points to petitioner's involvement with certain rental properties and the creation of a nonprofit organization as indicative of an ability to engage in substantial gainful activity.  However, we find that petitioner's involvement in these activities was de minimis.

to be indefinite within the meaning of section 72(m)(7) and section 1.72-17A(f)(3), Income Tax Regs.

In arguing that petitioner's disability was not indefinite, respondent primarily relies on the statement by petitioner's physician that, as of December 1998, there was "progress noted and fair prospects of eventual return to work in some capacity." We do not find this to be an indication that petitioner's condition was not indefinite. The statement "fair prospects of eventual return to work" is vague and provides no definitiveness to the longevity of petitioner's disability. Furthermore, the physician's prediction involved only a return to work "in some capacity." As noted above, for purposes of section 72(m)(7) an individual is considered to be disabled--even where the individual is employed in some capacity--where that individual is not employed in a type of activity in which the individual "customarily engaged prior to the arising of the disability". Sec. 1.72-17A(f)(1), Income Tax Regs. The physician's statement does not indicate whether he believed petitioner would ever be able return to the same type of work in which she was engaged prior to her disability.

We hold that petitioner is not liable for the section 72(t) additional tax because, contrary to respondent's assertions, petitioner's disability prevented her from engaging in

"substantial gainful activity" and was "indefinite" within the meaning of section 72(m)(7) and the regulations thereunder.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.